Of Counsel:
CRONIN, FRIED, SEKIYA,
 KEKINA & FAIRBANKS

| | |
|---|---|
| L. RICHARD FRIED, JR. | 0764-0 |
| JOHN D. THOMAS, JR. | 1415-0 |
| GEOFFREY K. S. KOMEYA | 6056-0 |

600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-1433
Facsimile:  (808) 536-2073
E-mail: rfried@croninfried.com
 jthomas@croninfried.com
 gkomeya@croninfried.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ISABELLA S. HOLMGREN, Individually and as the Personal Representative of the Estate of ERIC VAN HOLMGREN, Deceased, and as the Court-Appointed *Next Friend* for the Minor Children R.J.H. and C.V.H.; KEANU D. HOLMGREN; and EDWARD D. HOLMGREN, JR., <br><br>Plaintiffs, <br><br>vs. <br><br>UNITED STATES OF AMERICA, <br><br>Defendant. | CIVIL NO. _____ <br> (FTCA - Medical Malpractice) <br><br> COMPLAINT |

## **COMPLAINT**

Plaintiffs above named, by and through their attorneys, Cronin, Fried, Sekiya, Kekina & Fairbanks, for claims for relief against Defendant above named, allege and aver as follows:

### COUNT I

1. At all times relevant herein, plaintiff Isabella S. Holmgren (hereinafter "Mrs. Holmgren"), Individually and as Personal Representative of the Estate of Eric Van Holmgren, deceased, and as the Court-Appointed *Next Friend* for the Minor Children R.J.H. and C.V.H., was domiciled in and a citizen of the City and County of Honolulu, State of Hawaii.

2. Mrs. Holmgren is the surviving wife of Eric Van Holmgren, deceased, and is the duly appointed Personal Representative of the Estate of Eric Van Holmgren (hereinafter the "Estate").

3. At all times relevant herein, plaintiff R.J.H., a minor, (hereinafter "R.J.H.") was domiciled in and a citizen of the City and County of Honolulu, State of Hawaii.

4. At all times relevant herein, plaintiff C.V.H., a minor (hereinafter "C.V.H.") was domiciled in and a citizen of the City and County of Honolulu, State of Hawaii.

5. Eric Van Holmgren was the natural and legal father of minor children R.J.H. and C.V.H.

6. Mrs. Holmgren is the natural and legal mother of minor children R.J.H. and C.V.H.

7. Mrs. Holmgren is the duly appointed Next Friend for minor children R.J.H. and C.V.H.

8. Mrs. Holmgren brings this action individually, as the duly appointed Personal Representative of the Estate, and as the Court-Appointed *Next Friend* of minor children R.J.H. and C.V.H.

9. At all times relevant herein, plaintiff Keanu D. Holmgren was domiciled in and a citizen of the City and County of Honolulu, State of Hawaii.

10. Plaintiff Keanu D. Holmgren is the natural and legal son of Eric Van Holmgren and Mrs. Holmgren.

11. At all times relevant herein, plaintiff Edward D. Holmgren, Jr. was domiciled in and a citizen of the State of California.

12. Plaintiff Edward D. Holmgren, Jr. is the natural and legal father of Eric Van Holmgren.

13. This is a medical malpractice and personal injury action to recover damages which arise from negligent acts and/or omissions of

employees of the Government of the United States of America, while acting within the scope of their office and/or employment, under circumstances where the Government of the United States of America, if a private party, would be liable to plaintiffs.

14. Jurisdiction is conferred on this Court by Title 28, United States Code § 1346.

15. Pursuant to Title 28, United States Code, §§ 2671, et seq., administrative claims on behalf of plaintiffs were filed on or about September 29, 2016 with the Department of the Army.

16. The administrative claims were received by the Department of the Army on or about October 6, 2017.

17. More than six months have elapsed without final disposition of the administrative claims.

18. At all times relevant herein, Defendant United States of America (hereinafter "Defendant") operated a medical care facility in the City and County of Honolulu, State of Hawaii, known as Tripler Army Medical Center (hereinafter "TAMC"), through the Department of the Army.

19. On April 23, 2015 Eric Van Holmgren presented to the TAMC cardiology clinic for evaluation by cardiologist Dr. Ryan Smith upon referral

after a holter monitor showed an episode of non-sustained ventricular tachycardia.

20. Mr. Holmgren reported symptoms of having palpitations described as a pounding sensation in his chest that radiated up to his neck and were worse on the left side.

21. A Holter monitor study in March 2015 had identified ten events recorded as heart racing, skipped beats and chest pain correlated with sinus rhythm and PACs/PVCs. There was one symptomatic episode that correlated with a three beat run of non-sustained ventricular tachycardia.

22. An echocardiogram on April 15, 2015 was normal, showing no indication of a right ventricular outflow abnormality.

23. Mr. Holmgren had multiple risk factors for coronary artery disease, including hypertension starting at a young age, obesity with a BMI (Body Mass Index) of 31.2, hyperlipidemia (HDL 40, triglycerides 216), and strong family history of mother with myocardial infarction in her mid-50s and maternal grandmother death from myocardial infarction in her 60s.

24. On April 23, 2015 there was no reference to or assessment of Mr. Holmgren's lipid profile during this evaluation.

25. An electrocardiogram was performed in clinic and reported as normal sinus rhythm, no abnormalities noted.

26. Dr. Smith's impression was hypertension, ventricular tachycardia and premature contractions.

27. Dr. Smith wrote that he suspected the ventricular tachycardia was benign, possibly due to a right ventricular outflow tract tachycardia.

28. Dr. Smith wrote that he would not recommend any further testing except for the cardiac MRI which had been previously scheduled.

29. Mr. Holmgren was instructed to follow up as needed with his primary care physician.

30. Cardiac MRI was performed on May 1, 2015, and was reported anatomically and functionally normal.

31. The cardiac MRI showed no indication of a right ventricular outflow abnormality.

32. Based upon Mr. Holmgren's presenting symptoms, Holter findings and risk factors for coronary artery disease, it was essential that a comprehensive cardiac evaluation be performed to rule out coronary artery disease.

33. Dr. Smith's consideration of a right ventricular outflow tract tachycardia syndrome as a possible explanation for the potentially serious non-sustained ventricular tachycardia was a dangerous presumption

without other supportive diagnostic evidence and without first ruling out coronary artery disease by stress testing.

34. Because there was no evidence of a right ventricular outflow tract abnormality on echocardiogram or cardiac MRI, coronary artery disease should have been considered the likely cause of Mr. Holmgren's symptoms until otherwise excluded.

35. It violated the standard of care to discharge Mr. Holmgren back to the care of his primary care physician without first performing cardiac stress testing.

36. It was dangerous and exposed Mr. Holmgren to the risk of a sudden cardiac death to discharge Mr. Holmgren back to the care of his primary care physician without first performing cardiac stress testing to rule out coronary artery disease.

37. On December 28, 2015 Mr. Holmgren emailed his newly assigned primary care physician, Dr. Erica Meisenheimer, whom he had not yet seen. Mr. Holmgren reported in that email that "I made an appt w/you to check on my lungs." "I've been getting very short of breath lately. Just from the slightest activity sometimes."

38. Mr. Holmgren noted in that email "[d]on't know what it's from so I'm concerned about it."

39. In that email he asked Dr. Meisenheimer "[s]hould I be seen earlier than my 8 Jan appt?"

40. Dr. Meisenheimer replied by email on December 28, 2015, that "[y]ou are welcome to try to schedule an earlier appointment if you feel more comfortable with that, but I'm not sure what will be available."

41. On January 8, 2016 and thereafter, Eric Van Holmgren was further negligently treated by Tripler Army Medical Center ("TAMC") healthcare providers for symptoms of shortness of breath on exertion.

42. On January 8, 2016 Mr. Holmgren was seen by Dr. Meisenheimer. Mr. Holmgren renewed his report about recent shortness of breath.

43. Mr. Holmgren reported he noted shortness of breath walking up a single flight of stairs or across a parking lot.

44. He stated he had to stop several times while walking Maka-pu'u which was not normal for him.

45. Mr. Holmgren noted these symptoms started gradually over the last month or two.

46. Regarding Mr. Holmgren's shortness of breath, Dr. Meisenheimer's assessment was "[u]nclear etiology for symptoms at this time."

47. Dr. Meisenheimer ordered a chest x-ray and pulmonary function testing "to further evaluate."

48. Dr. Meisenheimer noted she "will pursue HF [heart failure] evaluation if work-up is negative."

49. Dr. Robert Carlisle discussed the case with Dr. Meisenheimer and noted "[a]lso, consider DDx [differential diagnosis] of systolic heart failure is [sic: if] work up is not insightful."

50. Based upon Mr. Holmgren's clinical presentation and his multiple risk factors for coronary artery disease, it was a violation of the standard of care to not order cardiac stress testing at this time to rule out coronary artery disease as the most likely cause of Mr. Holmgren's exertional dyspnea.

51. Chest x-ray taken on January 8, 2016 showed no acute cardio-pulmonary disease and was essentially normal.

52. Dr. Meisenheimer evaluated Mr. Holmgren on January 19, 2016.

53. Mr. Holmgren had not noticed any change in his exertional shortness of breath.

54. Mr. Holmgren again reported that after one flight of stairs he becomes short of breath and feels his heart beating harder.

55. Dr. Meisenheimer's assessment included "43 y[ear] o]ld] M[ale] with recent worsening DOE [dyspnea on exertion] of unclear etiology."

56. Dr. Meisenheimer ordered a CT of the chest and follow-up thereafter.

57. Pulmonary function testing performed on February 1, 2016 indicated a normal exam.

58. The chest CT was performed on February 2, 2016. It showed scattered coronary arterial calcifications slightly increased for age and findings suggestive of a cyst in the right kidney.

59. Dr. Meisenheimer consulted with Mr. Holmgren by telephone on February 12, 2016.

60. The finding of coronary artery calcification was further evidence of coronary artery disease.

61. It was a violation of the standard of care to fail to order cardiac stress testing at this time.

62. Dr. Meisenheimer reported to Mr. Holmgren "[y]our breathing tests are normal."

63. Dr. Meisenheimer notified Mr. Holmgren the CT scan showed normal lungs.

64. Dr. Meisenheimer also reported "[w]hile it's good that everything is normal, it doesn't give us any idea why you're having the shortness of breath. I would like to order an EKG stress test for you so that we can see what your exercise tolerance is, so I'm going to put in a consult for that."

65 An exercise treadmill stress test was performed on March 3, 2013 at TAMC.

66. The reason for the test was recorded as "recent dyspnea with any minimal activity."

67. The treadmill test was stopped due to shortness of breath and tightness in the neck

68. Mr. Holmgren's functional capacity was unable to be assessed due to shortness of breath.

69. Mr. Holmgren's heart rate response was "sub-optimal" and his blood pressure response was exaggerated.

70. The diagnostic impression for the treadmill stress test was recorded as "Submaximal non diagnostic treadmill test, with symptoms stated above produced."

71. Mr. Holmgren was sent home with instructions to "follow up as needed with PCM."

72. The healthcare providers at TAMC violated the standard of care in failing to promptly evaluate Mr. Holmgren following his March 3, 2016 exercise treadmill test to diagnose the cause of his persistent and concerning symptoms.

73. The healthcare providers at TAMC violated the standard of care in failing to promptly notify Eric Van Holmgren that his treadmill stress test results were abnormal.

74. The healthcare providers at TAMC violated the standard of care in failing to recommend and initiate diagnostic testing and treatment to improve Eric Van Holmgren's heart function prior to his death on May 1, 2016.

75. Mr. Holmgren's inability to complete the stress test due to shortness of breath and tightness in the neck provoked by physiologic stress was most consistent with significant coronary artery disease.

76. The cardiac stress test results made further evaluation by chemical stress testing or coronary angiography mandatory.

77. Had appropriate evaluation for coronary artery disease been initiated from and after April 23, 2015 up to the time of Mr. Holmgren's death, his multivessel coronary artery disease would have been identified

and successfully reperfused by angioplasty, stenting or coronary artery bypass.

78. Had Mr. Holmgren's coronary artery disease been diagnosed and treated in accordance with the standard of care, Mr. Holmgren would have lived a normal life expectancy.

79. On March 22, 2016 Mr. Holmgren emailed Dr. Meisenheimer:

> "I'm following up after my treadmill test 2 weeks ago.  Have you had the chance to review the results yet?  I don't think it went well.  If you can take a look, please advise on what I should do next.

80. Dr. Meisenheimer did not reply until April 14, 2016 at which time she emailed Eric Van Holmgren the following response:

> "I'm sorry it took me so long to get back to you; I was on nights for the last month, which made it difficult to keep up with everything.  The stress test was okay; obviously, your symptoms made it not perfect, but you reached the appropriate heart rate and you didn't have any EKG changes to make me concerned about your heart. Looking at all of the things you've had done over the last year (cardiac MRI, echo, stress test, pulmonary function test, x-ray, and CT), I'm reassured that there's nothing wrong with your heart or lungs and that this is likely deconditioning from decreased exercise/activity. I would suggest gradually increasing your cardiovascular activity level (walking, running, biking, swimming, etc) as well as your strength training.
>
> Please let me know if you need anything else.  – Dr. M"

81. Sixteen days later, on May 1, 2016, Eric Van Holmgren suffered a fatal cardiac event.

82. Autopsy identified severe coronary artery disease with 75-90% stenosis of the left anterior descending artery, 75% stenosis of the left circumflex artery, and 50% stenosis of the right coronary artery.

83. Cause of death was listed as atherosclerotic coronary artery disease.

84. Defendant negligently examined, evaluated, tested, diagnosed, cared for, and/or treated Eric Van Holmgren.

85. As a direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Eric Van Holmgren died.

86. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Eric Van Holmgren suffered great physical pain, suffering, discomfort, emotional injuries and distress and mental anguish and the Estate is entitled to recover damages therefor as provided in Hawaii Revised Statutes (hereinafter "H.R.S.") § 663-7.

87. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as

aforesaid, Eric Van Holmgren suffered permanent loss of enjoyment of life and the inability to pursue normal activities of life; and the Estate is entitled to recover damages therefor as provided in H.R.S. § 663-7.

88. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiffs have incurred medical, funeral and burial, and various other expenses in amounts not presently ascertainable that shall be shown at the time of trial; and Plaintiffs are thereby entitled to recover damages as provided in H.R.S. § 663-3.

89. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, the Estate has incurred loss of future excess earnings; and the Estate is thereby entitled to recover damages as provided in H.R.S. § 663-8.

90. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiffs have suffered, and will continue to suffer in the future, pecuniary injury, loss of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, spousal, parental and filial care and attention, advice, counsel, loss of spousal, parental and

filial care, training, guidance and education, and other benefits of their husband, father and son, respectively, for which said Plaintiffs are entitled to recover damages as provided in H.R.S. § 663-3; and in addition, have suffered and continue to suffer serious mental anguish and emotional distress and have been permanently injured, and said Plaintiffs are also entitled to recover damages therefor.

## COUNT II

91. The allegations contained in paragraphs 1 through 90 are realleged and incorporated herein by reference.

92. At all times relevant herein, the employees, agents, servants and representatives of TAMC who examined, diagnosed, cared for and treated Eric Van Holmgren were acting within the course and scope of their employment, agency and service with TAMC and therefore with Defendant.

93. Defendant is liable to Plaintiffs for the tortious conduct of the above-mentioned employees, agents, servants and representatives as set forth in this Complaint under the doctrine of <u>respondeat superior</u> and/or agency principles.

## COUNT III

94. The allegations contained in paragraphs 1 through 93 are realleged and incorporated herein by reference.

95. Defendants and their employees, agents, servants and representatives failed to inform Plaintiffs of the information a reasonable patient needs from health care providers to allow the patient and/or the patient's guardian or legal surrogate to make an informed decision regarding proposed treatment.

96. As a direct, legal and/or proximate result of Defendants' failure to provide Plaintiffs said information Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a. For general and special damages in amounts that will be proven at trial; and Plaintiffs further state that the amount of their damages as asserted herein falls within the jurisdictional requirements of this Court;

b. Interest as allowed by law;

c. Plaintiffs' costs of suit and attorneys' fees; and

d. Such other and further relief as this Court deems just and proper.

DATED:  Honolulu, Hawaii, July 3, 2017.

      /S/ L. Richard Fried, Jr.
L. RICHARD FRIED, JR.
JOHN D. THOMAS, JR.
GEOFFREY K. S. KOMEYA
Attorneys for Plaintiffs